[Civ. No. 54073. Second Dist., Div. Three. Nov. 9, 1979.]

ROBERT ALVIN CHANG, Plaintiff and Appellant, v.
CITY OF PALOS VERDES ESTATES, Defendant and Appellant.

COUNSEL

Richard J. Silber and Molly Wilson for Plaintiff and Appellant.

Mark C. Allen, City Attorney, Burke, Williams & Sorensen and Leland C. Dolley for Defendant and Appellant.

OPINION

**COBEY, Acting P. J.**—These are cross-appeals by real party in interest, City of Palos Verdes Estates (hereafter City), and the petitioner, Robert Alvin Chang (hereafter petitioner), from a judgment (1) directing the issuance of a writ of mandate commanding the City to pay petitioner full back pay from December 11, 1974 to November 11, 1975, the date the city council first sustained his discharge, and (2) remanding the matter to the City for the sole purpose of its reconsidering petitioner's discharge in light of Health and Safety Code section 11361.7 and *Governing Board* v. *Mann* (1977) 18 Cal.3d 819 [135 Cal.Rptr. 526, 558 p.2d 1]. The appeals lie. (Code Civ. Proc., § 904.1, subd. (a).)

The City challenges the correctness of the trial court's purported conclusions of law that petitioner did not delay unreasonably in the filing of his petition for writ of mandate, that the City was not prejudiced by this delay, and that, therefore, petitioner was not guilty of laches. The City further contends that it complied substantially with the predischarge requirements of *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], and that, in any event, under the circumstances of this case it should not have been required to comply fully with those requirements.

Petitioner, in a motion to dismiss the City's appeal, which we denied sometime ago without prejudice, asserts that the City has waived its right of appeal from the remand portion of the judgment since it has now voluntarily fully complied therewith. Petitioner, in his cross-appeal, contends that the trial court should have reinstated him to his former position as a fire engineer for the City because of the lack of any substantial evidence establishing that his criminal misconduct affected his fitness to perform the duties of his position.

For the reasons that follow, we believe that the trial court's judgment is legally correct in all respects challenged and we will, therefore, affirm it.

FACTS

Petitioner, a tenured civil service employee, was employed by the City as a fire engineer from November 1964 to December 11, 1974. Some two months prior to the last-mentioned date, that is, on October 4, 1974, petitioner was arrested at his home in another city for possession of marijuana, amphetamine sulfate and amobarbital, and a preliminary hearing of these charged offenses was held on November 13, 1974. This preliminary hearing was attended by the city manager and the fire chief of the City.

Petitioner was discharged by the fire chief, effective December 11, 1974, for the reasons set forth in the City's written notice of discharge of that date, which was signed by the mayor, the city manager and the fire chief. Petitioner did not receive prior to his discharge, however, written notice of the proposed discharge, a copy of the materials on

which it was based, and an opportunity to respond thereto, either orally or in writing.[1] Petitioner was replaced in his employment by another on January 1, 1975.

On March 25, 1975, petitioner was convicted of the misdemeanor possession of marijuana, amphetamine sulfate and amobarbital. He was given a suspended sentence and placed on probation for three years.

Petitioner appealed his discharge unsuccessfully to the Los Angeles County Civil Service Commission which, after a two-day hearing on April 28 and April 29, 1975, issued proposed findings of fact and conclusions of law on August 11, 1975, that petitioner had engaged in specified forms of criminal misconduct[2] and that this misconduct was reasonably and rationally related to the performance of the duties and conditions of his employment. The city council voted on November 11, 1975, to adopt the commission's proposed findings and conclusions and thereby to sustain petitioner's discharge.

Petitioner initiated the administrative mandamus proceeding before us on December 8, 1976.

### DISCUSSION

### 1. *The Absence of Laches on Petitioner's Part*

Petitioner delayed approximately a year after the city council sustained his discharge before seeking judicial review thereof. According to the declaration of his attorney, the explanation for this delay is that it took petitioner until August 2, 1976, to raise personally the $986.05 required to pay for the cost of the transcript of the aforementioned two-day administrative hearing because his union refused to help him. His attorney then took about four months to prepare his petition for extraordinary judicial review.

---

[1] These are the "preremoval safeguards" that are constitutionally required according to the aforementioned *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at page 215, which decision was filed some nine months subsequent to petitioner's discharge, but which, according to *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 402 [134 Cal.Rptr. 206, 556, P.2d 306], is applicable "to all pending cases where the dismissals are not yet final."

[2] The commission's proposed findings and conclusions stated, among other things, that on or about October 4, 1974, petitioner possessed at his home approximately 560 benzedrine tablets, 37 amobarbital tablets, and over 3 pounds of marijuana in various stages of production.

As already noted, the trial court expressly concluded as a matter of law that petitioner did not delay unreasonably in filing his petition for a writ of mandate; that the city was not prejudiced by his delay; and that, therefore, petitioner was not guilty of laches.

■ Ordinarily laches is a question of fact. (See *McClung* v. *Saito* (1970) 4 Cal.App.3d 143, 152 [84 Cal.Rptr. 44].) Whether laches has occurred in a particular case presents a question primarily for the trial court, and an appellate court will not interfere with a trial court's discretion in this respect unless it is obvious that manifest injustice has been done or unless its conclusions do not find substantial support in the evidence. (See *Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 433 [96 Cal.Rptr. 902].)

■ Neither of these conditions occurred in this case. Here the City clearly was not prejudiced by petitioner's delay since, as already noted, it had replaced him many months earlier.[3] Just as clearly, petitioner never acquiesced in the legality of his discharge. Accordingly, we agree with the trial court that petitioner was not guilty of laches.

2. *The Failure to Comply With the Constitutional Predischarge Requirements*

■ The City claims that it complied substantially with the aforementioned predischarge constitutional requirements which had then not yet been enunciated in *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at page 215. Yet, as already noted, the trial court expressly found that prior to petitioner's discharge he did not receive written notice of it, a copy of the materials on which it was based, and an opportunity to respond thereto, either orally or in writing. Our review of the record indicates that this finding is supported by substantial evidence and, in fact, the City does not claim otherwise.

What the City does assert is substantial compliance. The City points out that prior to petitioner's discharge petitioner either knew or reasonably could have inferred from his conversations with the fire chief that

---

[3]The fact that there were no vacancies in the City's fire department as of October 15, 1976, or as of January 28, 1977, appears to us to be irrelevant. A small fire department may be expected to have ordinarily a full complement but room could undoubtedly be found for petitioner if this court should order that he be reinstated to his former position.

his possible discharge would be based upon his apparent criminal misconduct as disclosed at the preliminary hearing which, as we have already noted, was attended by the city manager and the fire chief. The City does concede, however, that petitioner was not afforded the opportunity to respond to the written charges against him until the very moment of his discharge. That undoubtedly was too late.[4]

But the City argues that this procedural due process defect should be disregarded in this case because the law does not require idle acts (Civ. Code, § 3532); and since petitioner knew that his possible discharge would be based upon pending criminal charges, he would have invoked his constitutional privilege against compulsory self-incrimination had he been asked to respond to the City prior to his discharge. ■ The trouble with this argument is that the option of whether to respond to the charges lies with the employee exclusively and is in no way the property of the employer. The employee alone has to balance for himself his property interest in his job against his constitutional right to remain silent. The employee may ask for a deferment of the exercise of his right to respond until the criminal charges have been disposed of or the courts may in the future be willing to fashion an exclusionary rule applicable to the subsequent criminal trial similar to that enunciated in *People* v. *Coleman* (1975) 13 Cal.3d 867, 889 [120 Cal.Rptr. 384, 533 P.2d 1024], with respect to the revocation of probation for a subsequent crime. In any event under *Skelly* the employee must be accorded, prior to discharge, the opportunity to respond to the grounds for the contemplated discharge. Petitioner was not given that opportunity and the City thereby became liable to him for the back pay award that the trial court made against it.

3. ■ *The City has Waived Its Right to Appeal From the Portion of the Judgment Remanding the Matter to the Council for Reconsideration of the Penalty Imposed Upon Petitioner.*

According to the City's return to the peremptory writ of mandate issued below in this case, the city council on June 14, 1977, reconsidered petitioner's discharge, without consideration of the facts and circumstances leading to his arrest and conviction for possession of marijuana

---

[4]The City's reliance upon *Bussey* v. *Los Angeles County Civil Service Com.* (1977) 72 Cal.App.3d 912, 922 [140 Cal.Rptr. 394], is misplaced. There the public entity initiated the punitive action against the employee with a written performance evaluation report and a plan of improvement, which the employee was repeatedly invited but refused to discuss.

(as required by Health & Saf. Code, § 11361.7, subd. (b)), and again sustained the discharge. This action on the part of the city council constituted voluntary compliance with this portion of the judgment and by such compliance the City impliedly waived its right to appeal from this portion of the judgment. (See *Hellman Commercial T. & S. Bk.* v. *Alden* (1929) 206 Cal. 592, 599 [275 P.794].)

4. ■ *Substantial Evidence Supports the Trial Court's Implied Finding of Fact That Petitioner's Criminal Misconduct Affected His Potential Fitness to Perform the Duties of His Employment*[5]

Petitioner was employed by the City as a fire engineer. This means that ordinarily he drove a fire truck. Furthermore, as a fire fighter, he was on 24-hour emergency call by the fire department. As may be reasonably inferred from the city manager's testimony at the administrative hearing, in view of the substantial amount of drugs possessed by petitioner at the time of his arrest in 1974, the City had reason to believe that his possible use of these drugs at home might one day interfere with either his driving capability or with his ability to respond promptly and surely to fire emergencies, or with both. The City simply could not risk this potential for job unfitness on the part of a regular fire fighter in a small department.[6]

5. ■ *Petitioner Has No Greater Rights Than Those Accorded Him by the Trial Court*

At oral argument petitioner suggested that under *Skelly* and *Barber* he is entitled to appeal the city council's adverse reconsideration of his discharge to the Los Angeles County Civil Service Commission and that pending such administrative appeal he is further entitled to reinstatement to his former position and full back pay to the time of such

---

[5]In an administrative mandamus proceeding the trial court's findings of fact are binding upon the appellate court if they are supported by substantial evidence. (See *Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572, P.2d 53].)

The trial court's actual finding of fact in this area is not a model of clarity, but the parties seem to have understood its purport.

[6]It can be argued that in view of the frequent association of young people of the City with the City's fire fighters, the latter must possess records that are above reproach.

reinstatement. This court permitted the parties to file simultaneous briefs subsequent to the oral argument with respect to this tardy contention.

We have considered these briefs and have concluded that petitioner has no such rights. The city council in sustaining petitioner's discharge a second time did so without consideration of the facts and circumstances leading to his arrest and conviction for possession of marijuana. Under *Skelly* a disciplined employee is entitled to back pay only "for the period of wrongful discipline." (*Barber* v. *State Personnel Bd., supra,* 18 Cal.3d at p. 402.) That period in this case ended on November 11, 1975, when the city council first sustained petitioner's discharge following the full evidentiary hearing thereon before the Los Angeles County Civil Service Commission the prior April. (See *id.* at pp. 401-402; *Ng* v. *State Personnel Bd.* (1977) 68 Cal.App.3d 600, 607-608 [137 Cal.Rptr. 387].)

### DISPOSITION

The judgment under appeal is affirmed.

Allport, J., and Potter, J., concurred.