[Civ. No. 54436. First Dist., Div. Three. Dec. 6, 1982.]

CITY OF CARMEL-BY-THE-SEA, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF MONTEREY COUNTY,
Defendant and Appellant;
RANCHO CANADA DE LA SEGUNDA, INC.,
Real Party in Interest and Appellant.

COUNSEL

Ralph R. Kuchler, County Counsel, and Jose Rafael Ramos, Senior Deputy County Counsel, for Defendant and Appellant.

Hudson, Martin, Ferrante & Street and Michael A. Albov for Real Party in Interest and Appellant.

George W. Brehmer, City Attorney, and Walker, McClure, Bohnen & Brehmer for Plaintiff and Respondent.

OPINION

BARRY-DEAL, J.—The Monterey County Board of Supervisors (hereafter Board) and Rancho Canada de la Segunda, Inc. (hereafter Rancho), appeal from an order stating that the Board failed to comply with the trial court's peremptory writ of mandate and that a use permit which the Board had issued to Rancho was invalid. We affirm.

### STATEMENT OF THE CASE AND OF THE FACTS

Rancho applied for a use permit to construct a 376-room resort hotel and lodge complex with 12 tennis courts and other supporting facilities. The Monterey County Planning Commission found that the proposal would be inconsistent with the general plan affecting the area. Rancho appealed to the Board, which found by a vote of three to two that the development was consistent with the Carmel Valley Master Plan. On May 9, 1979, the planning commission met to consider Rancho's amended application for a use permit to construct a 175-room facility with 4 swimming pools and 4 tennis courts. A motion to approve the use permit was not carried because the vote was tied at three to three.

On July 9, 1979, respondent, City of Carmel-By-The-Sea (hereafter City) adopted a resolution (No. 79-28) addressed to the Board opposing issuance of the use permit to Rancho and requesting that the permit not be considered until the Carmel Valley Master Plan was adopted and until the Monterey County General Plan update was completed.

In the interim, on May 8, 1979, the City had obtained an alternative writ of mandate from the Monterey County Superior Court in action No. M 9647, reciting that the county had failed to adopt a legally adequate general plan. The City states and the Board does not deny that the case was settled through the

Board agreeing, in relevant part, to apply to the state Office of Planning and Research (hereafter OPR) for establishment of conditions under which development might continue and to adopt a moratorium ordinance applicable to Carmel Valley. (Gov. Code, §§ 65302.6, 65858.)[1]

On August 21, 1979, the Board, by a vote of three to two, granted Rancho's appeal and approved the use permit subject to 27 conditions. Condition number 25 provided: "That this project be consistent with all conditions made a part of the extension of time for preparation and adoption of each of the mandatory general plan elements granted by the State Director of Planning and Research."

The Board applied to OPR for the extension on August 28, 1979, and it was granted on October 9 of that year. The first condition of the extension was: "In the case of development proposals for areas of internal plan inconsistency, the most restrictive plan designation shall be utilized as the basis for a consistency determination."

On February 15, 1980, the City filed a petition for writ of mandate, pursuant to Code of Civil Procedure section 1094.5, seeking to compel appellant Board to set aside its decision of August 21, 1979, granting the conditional use permit to real party in interest, Rancho. In its first cause of action the City alleged that the Board's determination in favor of the use permit was not supported by substantial evidence and constituted an abuse of discretion. As to this cause of action the City alleged that on August 21, 1979, the Board had heard Rancho's appeal from the Monterey County Planning Commission's denial of a conditional use permit for a resort hotel proposed to be located in an area designated in the Carmel Valley Master Plan (adopted January 1961) for "rural residential expansion," and designated in the Monterey Peninsula Area Plan (adopted July 1966) as "suburban." The City alleged that notwithstanding these designations and the fact that both plans designated other sites for resort hotels, the Board adopted findings that the permit was consistent with the plans as well as with the conservation and open-space elements of the existing general plan of the County of Monterey.

---

[1]Government Code section 65302.6 provides in essence that the OPR may grant a city and/or county which has an inadequate existing general plan an extension of time for completion of an adequate general plan, and that during the extension period the public entity is excused from the requirement that its land decisions comply with an adequate existing general plan so long as those decisions comply with the conditions established by OPR in granting the extension. (See *Resource Defense Fund* v. *County of Santa Cruz* (1982) 133 Cal.App.3d 800 [184 Cal.Rptr. 371].)

Government Code section 65858 provides that a legislative body may enact an urgency measure prohibiting any land uses which may be in conflict with a contemplated zoning proposal. (See *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 314 [118 Cal.Rptr. 315].)

In its second cause of action the City asserted that the county had failed to adopt a sufficient general plan as mandated by Government Code section 65302, and that the subsequent extension for completion of the general plan granted by OPR pursuant to Government Code section 65302.6 could not validate the previous improper grant of the conditional use permit.

A third cause of action stated that particular findings were not supported by the evidence, and a fourth brought into question the propriety of the Board's granting Rancho the right to exercise its permit for a period of up to six years in the event of litigation.

The prayer sought: (1) an alternative writ commanding the Board to set aside its approval of the use permit or to show cause why it had not done so and why a peremptory writ should not issue; (2) upon return of the alternative writ, a peremptory writ compelling vacation of approval of the permit; (3) a stay of the effectiveness of the permit; (4) a declaration voiding the six-year provision of the permit; (5) costs; and (6) other appropriate relief.

At a hearing on September 17, 1980, the court received the administrative record and exhibits in evidence. Upon motion of the Board, and over the City's objection, the court took judicial notice of action No. M 9647.[2]

The cause was heard on September 25 and October 29, 1980, at which time counsel for all parties argued the matter extensively. In particular, counsel for the City (Alexander T. Henson) emphasized the position taken in the second cause of action—that the county's existing general plan was inadequate—and in the first cause of action—that the permit was inconsistent with the applicable existing plans.[3] Counsel for the Board (Jose Rafael Ramos) and Rancho (Michael A. Albov) suggested that land use need only be generally compatible with the general plan, and that the City's objections to the adequacy of certain elements of the general plan did not "relate to" the use permit under consideration.

[2] Judicial notice may properly be taken of the records of any court of this state. (Evid. Code, § 452, subd. (d)(1).)

The City has attached to its brief a copy of an alternative writ issued in that case, and the Board has not disputed its accuracy. The alternative writ, issued on May 8, 1979, states that, it appearing that the Board had not adopted a legally adequate general plan, it was ordered to cease preparation and implementation of specific plans (pursuant to Gov. Code, § 65450) and to adopt a proper general plan, or to show cause why it had not done so. The case was settled as stated above.

[3] Every county is required to adopt a "comprehensive, long-term general plan for . . . [its] physical development . . . ." (Gov. Code, § 65300.) The propriety of virtually any local decision affecting land use and development depends upon consistency with the applicable general plan and its elements. Absence of a valid general plan, or relevant elements thereof, precludes all development except under an extension granted by OPR pursuant to Government Code section 65302.6. (See, generally, *Resource Defense Fund* v. *County of Santa Cruz, supra*, 133 Cal.App.3d at p. 806.)

On December 19, 1980, the court (Judge Richard M. Silver) filed its intended decision, concluding that the matter should be remanded to the Board. The court found that the action was not barred by the statute of limitations, that the City was estopped, because of settlement of case No. M 9647, from attacking the adequacy of the general plan as it would affect all development, but that it was not estopped from attacking the consistency of this use permit with the existing general plan and conditions of the OPR extension.

As to the effect of the OPR extension pursuant to Government Code section 65302.6, the court correctly anticipated our holding in *Resource Defense Fund* v. *County of Santa Cruz, supra,* 133 Cal.App.3d 800, that an extension does not exempt approvals which preceded the period of the extension from the requirement that land use be compatible with or consistent with a valid existing general plan.

The court went on to state that if an approval which preceded the OPR extension period is attacked as inconsistent with the applicable plan, it must be reviewed for consistency not only with the plan, but also with the OPR conditions. As to this particular use permit, the court found dispositive of this issue the fact that ". . . THE GRANTING OF THE USE PERMIT WAS SPECIFICALLY CONDITIONED ON THE PROJECT BEING CONSISTENT WITH ALL CONDITIONS MADE A PART OF THE OPR EXTENSION."

Upon its review of the administrative record the court found that the Board's decision to grant the permit might be inconsistent with the OPR conditions. As stated above, OPR condition No. 1 provided that in the event that a proposal was for an area "of internal plan inconsistency, the most restrictive plan designation shall be utilized as the basis for a consistency determination." The court stated that during the hearing on consistency substantial disagreement arose about the proper interpretation of land use designations in the existing general plan and its amendments. The map and diagram which composed the Monterey Peninsula Area Plan, for example, did not include the Rancho site in areas specified for tourist accommodations. But the Board argued that the site was included in a buffer area around commercial centers in the Carmel Valley Master Plan and that the latter was adopted along with the Monterey Peninsula Area Plan. The City countered that the Rancho site was not included in the map specifying the buffer.

The court cited and quoted additional areas of conflict in the administrative record, stating several times that close questions of interpretation were involved, and concluding that the Board may not have taken the "most 'restrictive' plan designation" when considering this case. The court therefore concluded that remand would be required.

On January 23, 1981, the court filed its judgment granting peremptory writ of mandamus, ordering that a peremptory writ would issue remanding the proceedings to the board and commanding it "to set aside its approval [of the Rancho use permit] unless and until [the Board] adopts findings supported by substantial evidence that the use permit . . . is consistent with the general plan requirements and conditions of the extension granted by the [OPR] . . . ."

The record before us contains neither a peremptory writ of mandate, nor a clear indication that one was ever issued and served.[4] Nevertheless, on May 11, 1981, the Board filed its "Return to Peremptory Writ of Mandate," stating that it had complied with the command of the writ by deleting from the permit condition No. 25, which had required that the Rancho project "be consistent with all conditions made a part of the [OPR] extension . . . ." The return was supported by attached "Findings of Fact."

On May 26, 1981, the City moved for an order finding that the Board had not complied with the writ. The motion was opposed, and on June 26, 1981, the court issued its judgment that the Board's response was inadequate and that the use permit was "now invalid." In an order following hearing, filed July 27, 1981, the court set out its reasoning and reiterated this order. This appeal followed.

Other pertinent facts are developed in the discussion.

### DISCUSSION

*Appealability of the Court's Orders*

■ Upon the trial court's issuance of its judgment granting the peremptory writ, the Board had two options available to it: either to appeal that judgment or to comply with it. To the extent that the Board voluntarily elected to follow the latter course, it waived its right to appeal. (*Chang* v. *City of Palos Verdes Estates* (1979) 98 Cal.App.3d 557, 565 [159 Cal.Rptr. 630], citing *Hellman Commercial T. & S. Bk.* v. *Alden* (1929) 206 Cal. 592, 599 [275 P. 794]; see *Carroll* v. *Civil Service Commission* (1970) 11 Cal.App.3d 727, 731, 733 [90 Cal.Rptr. 128]; see also Deering, Cal. Administrative Mandamus (Cont.Ed. Bar Supp. 1981) [hereafter cited as Deering Supp.] § 14.15, p. 166.) Here the Board's return to the writ stated that it had complied with the directions of the court. Therefore, we deem the Board to have waived its right to appeal from those portions of the writ with which it voluntarily purported to comply. The

---

[4]In cases such as this the function of the judgment is to order that the writ issue and to dispose of the question of costs. The additional step of actually issuing and serving the writ is often overlooked. (Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) [hereafter cited as Deering] §§ 14.7, 14.10, pp. 239-240, 241.)

fact that further proceedings were required to enforce the order does not affect this result. (*Carroll* v. *Civil Service Commission, supra,* 11 Cal.App.3d at p. 733.)

We must also examine the question of appealability of the order specified in the notice of appeal as that from which this appeal is taken—the order following hearing on adequacy of respondent's return to peremptory writ of mandate. Where an order after an appealable judgment simply leaves the judgment intact and neither adds to nor subtracts from it, the order is not appealable. But where the order relates to enforcement of a judgment, it is appealable. (*Redevelopment Agency* v. *Goodman* (1975) 53 Cal.App.3d 424, 429 [125 Cal.Rptr. 818].) We deem an order regarding adequacy of a return as one relating to enforcement of a judgment and therefore conclude that it is appealable.[5] We turn to the merits of the contentions on appeal.

### Propriety of Trial Court Proceedings

■ The Board's contention that the trial court could not properly determine the adequacy of its return to the writ without proceeding under a new petition for writ of administrative mandate is not persuasive. Code of Civil Procedure section 1097 provides in part that when a peremptory writ has issued and is persistently disobeyed, the court ". . . may make any orders necessary and proper for the complete enforcement of the writ." It is well settled that the court which issues a writ of mandate retains continuing jurisdiction to make any order necessary to its enforcement. (*County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 205 [139 Cal.Rptr. 396]; accord, *Professional Engineers in Cal. Government* v. *State Personnel Bd.* (1980) 114 Cal.App.3d 101, 109 [170 Cal.Rptr. 547].) Where, as here, the writ remands the matter to the administrative body with directions to proceed in a certain manner, and the return states that the court's mandate has been carried out, the petitioner may challenge the validity of that claim in one of several ways. Petitioner may proceed by a new petition under Code of Civil Procedure section 1094.5, or by supplemental petition (using the original action number). (*Professional Engineers in Cal. Government* v. *State Personnel Bd., supra,* 114 Cal.App.3d at p. 111; Deering, *supra,* § 14.19, p. 248.) But the petitioner is not required to proceed by writ; if it or the court is not satisfied with the return, the court may, on its own motion or on that of the petitioner, either oral or written, order the respondent to reconsider further. (See *County of Inyo* v. *City of Los Angeles, supra,* 71 Cal.App.3d at p. 188; *Allegretti* v. *Bd. Osteopathic Examiners* (1956) 145 Cal.App.2d 435, 438 [302 P.2d 694]; see also Deering Supp., *supra,* § 14.15, p. 166.) We therefore reject the Board's claim of procedural error.

---

[5]This view finds support in *Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 256 [90 Cal.Rptr. 169, 475 P.2d 201], wherein the Supreme Court assumed the appealability of this type of order. (See Deering Supp., *supra,* § 14.15, p. 166.)

*Propriety of the Trial Court's Rulings*

■    The remaining contentions raised by the Board are couched in a variety of terms and appear to raise fine points of trial and appellate procedure. Most, however, are, as was stated by the trial court, specious. The true issue to be resolved on this appeal is simply whether the trial court erred in finding that the Board failed to comply with the writ and in ruling that the use permit was therefore invalid.

As stated above, we do not have before us the question of the validity of the trial court's judgment granting the writ. Our concern is with the Board's response to it and the trial court's assessment of and reaction to that response.

The judgment of January 23, 1981, ordered the Board to do one of two things: either (1) to set aside its approval of the use permit, or (2) to adopt findings supported by substantial evidence that the permit was consistent with the existing general plan and with the OPR conditions.[6] In response to this mandate the Board neither set aside its approval of the permit nor adopted findings supported by substantial evidence that the permit was consistent with the existing general plan and with the OPR conditions. Instead the Board adopted resolution No. 81-233, deleting from the permit condition No. 25, which had provided that the "project be consistent with all conditions made a part of the extension of time for preparation and adoption of each of the mandatory general plan elements granted by the [OPR]."

It is clear that the Board did not comply with the court's instructions. The Board's rationale in support of its action may be found in its findings of fact in support of resolution No. 81-233 and in arguments and briefs to the lower court and this court: The permit was issued August 21, 1979, and the OPR conditions were not effective until October 9, 1979. Since, according to a letter from OPR dated February 23, 1981, OPR conditions do not apply to permits which

---

[6]The judgment provided: "It Is Ordered that: [¶] 1. A Peremptory Writ of Mandamus shall issue from this Court remanding the proceedings to Respondent and commanding Respondent to set aside its approval, dated August 21, 1979, granting a use permit to Rancho Canada de la Segunda, Inc., unless and until Respondent adopts findings supported by substantial evidence that the use permit of Real Party in Interest is consistent with the general plan requirements and conditions of the extension granted by the Office of Planning and Research pursuant to Government Code § 65302.6, and to take any further action specially enjoined upon it by law; but nothing in this Writ shall limit or control in any way the discretion legally vested in Respondent."

The last clauses of the order are taken directly from Code of Civil Procedure section 1094.5, subdivision (f), which provides: "(f) The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law but the judgment shall not limit or control in any way the discretion legally vested in the respondent."

preceded their effective dates, the Board could simply delete condition No. 25 from the permit. Furthermore, the rationale continues, when the Board approved the permit it had already determined consistency with the existing general plan; therefore, the Board does not deem it appropriate or necessary to reopen that question. The Board's findings go on to state that removal of condition No. 25 is reasonable and fair.

This line of so-called reasoning is without logical foundation. The court's mandate seems clear enough, but if it was in any way deemed unclear or ambiguous, resort should have been taken to the court's intended decision. (*Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 289, fn. 8 [159 Cal.Rptr. 528].) That document and the record before us place the judgment in a context which belies the Board's seemingly innocent but misguided attempt to comply with the court's ruling.

The City had previously brought an action (No. M 9647) to have the general plan declared inadequate and to stop preparation and implementation of specific plans. The settlement between the City and the Board which ended that dispute provided that the Board would apply to OPR for establishment of an extension with conditions pursuant to Government Code section 65302.6. In addition, in approving the permit here under consideration, the Board established condition No. 25, providing that the project would comply with these OPR conditions. This series of events clearly implies that the Board deemed its existing general plan inadequate. This conclusion finds additional support in the county's application to OPR for the extension, wherein the Board stated that the extension was "required" to update the plan and to "assure production of a complete, adequate, and internally consistent document." Also, the Board admitted, albeit for purposes of the application only, "that because of (a) changing conditions in the County, (b) the lapse of time, and (c) the imposition of additional State requirements without additional necessary funding, the General Plan has become outdated and therefore is incomplete and inadequate, . . ."

The extension which issued as a result of this application provided as its first condition that "[i]n the case of development proposals for areas of internal plan inconsistency, the most restrictive plan designation shall be utilized as the basis for a consistency determination."

It is within this context that the trial court implicitly found the existing general plan to be inadequate and therefore ordered that the permit must either be vacated or the Board must find, as it had not done before, that the permit was consistent with the existing plan *and* with the OPR conditions. The Board's response deleting the requirement of consistency with the OPR conditions and refusing to reopen the question of consistency with the existing plan could hardly have been in good faith under these circumstances. (At one point the court characterized the Board's actions as specious and in bad faith.)

As the court explained at the hearing on adequacy of the return, if the existing general plan was inadequate, the permit was necessarily void. (See *Resource Defense Fund* v. *County of Santa Cruz, supra,* 133 Cal.App.3d 800, 806.) If that were the case, a new application would have to be filed, and this new permit would have to comply with the OPR conditions which had since been promulgated. The trial court therefore viewed the approach taken in its intended decision and judgment as simply a short cut to this same end.

When, at the hearing upon adequacy of the return, the Board argued that the court had not in fact decided the issue of adequacy of the plan, the court gave counsel and the Board an opportunity to address that question, but this offer was declined, counsel maintaining incorrectly that the court had lost jurisdiction over the issue. The court did not, as the Board asserts, refuse to permit it to present evidence.

It was at this point that the court expressly stated its finding that the plan was inadequate.[7] We reject the Board's argument that the ensuing order exceeded the court's jurisdiction in the case. As we previously indicated, the court retained continuing jurisdiction to enforce its original judgment. The Board's persistent refusal to comply with the writ or otherwise to act in a manner consistent with its previous settlement and commitment that this project would comply with the OPR conditions provides abundant support for the trial court's determination that the Board did not obey the writ and that the permit is invalid.

The order is affirmed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied January 5, 1983, and the petition of all appellants for a hearing by the Supreme Court was denied February 2, 1983.

---

[7]We note that in 1981 the Legislature passed a special bill (Assem. Bill No. 2051) which in effect granted Monterey County an additional one-year extension under Government Code section 65302.6, and that in conjunction with that act the Legislature found and declared "that the County of Monterey has been unable to adopt a complete and adequate general plan . . . ." (Stats. 1981, ch. 906, § 1, p. 3438.)