Filed 9/11/25  City of Fresno v. Pinedale County Water District CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF FRESNO,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PINEDALE COUNTY WATER DISTRICT,<br><br>Defendant and Appellant. | F088121<br><br>(Super. Ct. No. 18C-0051)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

Costanzo & Associates and Neal E. Costanzo for Defendant and Appellant.

Whitney, Thompson & Jeffcoach, Joseph D. Rubin and Kyle A. Hampton for Plaintiff and Respondent.

-ooOoo-

This controversy began in December 2007, when the City of Fresno (City) wanted to audit the finances of the Pinedale County Water District (District) pursuant to an agreement between them.  The City obtained a judgment against the District that allowed the City to conduct the audit and awarded the City contractual attorney fees.  We affirmed the judgment and the award of attorney fees in 2013.  In 2017, after settlement talks

broke down, the City brought an action for a petition for writ of mandate to compel the District to pay the judgment as provided in Government Code section 970.2. The trial court issued a judgment ordering the District to pay the amount awarded in the judgment from the underlying action, plus interest, and the City to recover its attorney fees and costs as the prevailing party, which it awarded in a subsequent order and added to the judgment. We affirmed that judgment in 2022.

In 2024, the City brought a motion to enforce the judgment and writ of mandate pursuant to Code of Civil Procedure section 1097.[1] The trial court granted the motion and ordered the District to immediately pay upon obtaining sufficient funds the $312,304.25 judgment in the City's favor, plus interest, and fined the District $1,000 due to its persistent failure to make plans to pay the full judgment in a timely manner or take timely steps to secure court approval of a payment plan.

The District appeals, arguing the trial court erred in granting the motion and issuing its orders because: (1) a writ of mandate was never issued or personally served on the District; (2) the District did not refuse or neglect to conform to any writ without just excuse, as it made plans to pay the judgment in installments; and (3) the City impliedly accepted the payment plan and is estopped from objecting to it because it did not object to the District's plan to pay the judgment in installments. We agree with the District's first contention, as a writ of mandate was never issued or properly served on the District. Therefore, we reverse the trial court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Audit Lawsuit*

The District and the City entered into an agreement, effective January 1, 2007, which required the City to receive and dispose of the District's sewage in exchange for an

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

agreed payment.[2]  Beginning in December 2007, the City informed the District that it wanted to conduct an audit of the District's fiscal records pursuant to a provision in the parties' agreement, but the District refused to submit to an audit.

The City filed suit against the District in Fresno County Superior Court, asserting claims for breach of contract, declaratory relief, and accounting, seeking specific performance and injunctive relief.  The lawsuit subsequently was transferred to Madera County Superior Court.

Following a bench trial, the Madera court found in the City's favor on all of its claims and granted the City's requests for specific performance of the agreement, injunctive relief, and an accounting.  The court issued a judgment which ordered that the City be allowed to conduct an investigation and audit of the District's internal financial controls and operations and provided that the City could recover its costs, including attorney fees, as permitted by statute or contract.  The court subsequently issued an amended judgment, which added $86,658.53 in attorney fees and costs awarded to the City to the original judgment.

The District appealed both the Madera judgment and the award of costs and attorney fees, both of which we affirmed in *City of Fresno v. Pinedale County Water District* (Sept. 17, 2013, F064112) [nonpub. opn.] and *City of Fresno v. Pinedale County Water District* (Sept. 17, 2013, F064758) [nonpub. opn.], respectively.  In both appeals, we awarded costs to the City.

The trial court subsequently awarded the City its appellate costs and attorney fees, which was added to the amended judgment.  This resulted in a second amended judgment of $127,515.84 against the District (the Madera judgment).

---

[2]     The City filed an unopposed request to take judicial notice of the parties' January 1, 2007 agreement, which we deferred ruling on pending consideration of the appeal on the merits.  We now grant the request under Evidence Code sections 452, 453, and 459.

***The City's Petition for Writ of Mandate***

The District declined to pay the Madera judgment and instead attempted to negotiate a settlement with the City. The parties, however, did not settle, so the City filed a petition for writ of mandate in Fresno County Superior Court to compel the District to pay the Madera judgment as provided in Government Code section 970.2. The action was transferred to Kings County Superior Court, where a three-day court trial was held. During the trial, the District's attorney stated the District was not going to pursue payment under Government Code section 970.6.

The trial court issued a statement of decision, which noted that the District rejected the opportunity to pay the judgment over a 10-year period as provided in Government Code section 970.6. The trial court found the City established the existence of the judgment, the demand for payment, and the District's failure to pay any part of the judgment. Accordingly, the trial court granted the petition for writ of mandate, ordered the District to pay the $127,515.84 judgment, plus $18,080 in interest and awarded attorney fees and costs to the City.

In December 2019, the trial court entered a judgment which stated: (1) the petition for writ of mandate is granted and the District is ordered to pay the City "the sums awarded under the Madera County Superior Court's Second Amended Judgment ($127,515.84) … plus accrued interest in the amount of $18,080 as of May 31, 2019, plus interest accruing from June 1, 2019 until paid [at] a rate of $7.41 per day"; (2) the City shall recover its attorney fees and costs as the prevailing party; and (3) the court would retain jurisdiction to address and resolve any issues or disputes relating to the City's recovery of costs or relating to enforcement of the judgment. In January 2020, the trial court awarded the City $92,201 in attorney fees and costs and issued an amended judgment that added the fees and costs to the December 2019 judgment.

The District appealed the December 2019 judgment and the January 2020 amended judgment, as well as orders granting an award of attorney fees and denying a

new trial motion.  We affirmed the judgments in an unpublished opinion, *City of Fresno v. Pinedale County Water District* (June 10, 2022, F080769).  Following the appeal, the trial court awarded the City its attorney fees and costs on appeal totaling $45,961, and determined $28,546.57 in interest had accrued through December 31, 2022.  The trial court issued a second amended judgment which added those amounts to the amended judgment and ordered the District to pay the City $312,304.25, plus interest accruing thereon at seven percent per annum, or $59.89 per day (the Kings judgment).[3]

**The District's Subsequent Actions Concerning the Kings Judgment**

On November 3, 2022, the president of the District's board of directors (the board) sent a letter to the City's mayor advising that the District intended to assess a surcharge on fees for sewer services against every sewer connection in an amount necessary to pay the Kings judgment.  The board complained that it was "being treated as a rogue agency that is somehow cheating the City out of what it is rightfully owed under our agreement."  The board asked the mayor or the city council to review the case to determine if the City wished to enforce the monetary judgment or whether the circumstances warranted forgiveness of the debt.  The president stated that if the board did not receive a written agreement or other official directive to file a satisfaction of the judgment within 30 days, the board would issue a notice of public hearing on the proposed rate increase and provide copies to the media.  Attached to the letter was a copy of a resolution the board adopted and a draft notice to the District's sewer customers of a proposed rate increase necessary to cover the amount the District was ordered to pay the City.

---

[3]     Before the City submitted the second amended judgment to the trial court, the District's counsel sent a letter to the City's counsel objecting to entry of the amended judgment.  The District asserted the trial court did not have jurisdiction to enter the second amended judgment and threatened to move to set aside the judgment if it were entered.  The record does not show that the District appealed the second amended judgment.

The resolution attached to the letter was adopted on November 1, 2022 (the 2022 resolution). The resolution stated the board approved and directed the issuance of a notice to ratepayers of the District's intent to raise sewage collection services as necessary to pay the judgment in full over a 10-year period, with annual payments to commence on July 1, 2023. The 2022 resolution further stated the board would pay the amount of the judgment in full, with interest, in equal annual installments and assess its sewage service customers the amount necessary to make the payments. The board found that paying the judgment in any manner other than in 10 equal annual installments with interest would create an undue hardship on the District as it would likely prevent the District from operating and continuing to provide potable water to its residents and businesses for reasons stated in the resolution.

The letter was copied to two Fresno City councilmembers whose council districts included territory within the District's boundaries. The letter, however, was not sent to the City's outside counsel, the City Attorney's office, or the designated recipient for notices under the contract.

According to the District's counsel, Neal E. Costanzo, the board appointed representatives to communicate with the mayor and city council members concerning the requests made in the letter. At District board meetings held between November 1, 2022, and July 11, 2023, reports were provided to the president and specific directors concerning communications with the mayor and city council members.

On July 11, 2023, the District adopted Confidential Resolution No. 2023-01 (the 2023 resolution) that approved and directed the issuance of a notice to its ratepayers "of the intent to raise sewage collection services provided by the District" as necessary to pay the judgment in full, and any other amounts the court may order the District to pay to the City, with interest, over a 10-year period.[4] The resolution stated the board would pay the

_____

[4]  One of the resolution's recitals stated: "WHER[E]AS, on December 9, 2019, the Kings County Superior Court, in a mandate proceeding under Government Code §970 et seq, initiated and authorized unilaterally by the now former Fresno City Attorney

6.

judgment with interest in equal annual installments and assess its sewage customers the amount necessary to make those payments beginning six months after the date on which the increase in rates became effective.

The 2023 resolution further stated that the board determined paying the judgment in anything other than 10 equal annual installments with interest would create an undue hardship on the District and likely prevent it from operating and continuing to provide potable water to its residents and businesses for the reasons set forth in the resolution. The resolution stated a copy of the resolution "shall be provided to the City of Fresno, directly to its Mayor and City Council." The resolution recited that the City, through its mayor and city council, had been aware of the District's intent to adopt the resolution and raise sewer rates to pay the judgment in installments since November 2022, and while the City assured the District it would negotiate a resolution of the debt, it appeared the City did not intend to do so, which left adoption of the resolution and issuance of the notice of rate increases the District's only option to address the judgment.

The notice of public hearing attached to the 2023 resolution identified October 17, 2023, as the proposed date for the hearing on whether to raise rates. The notice estimated sewer rates would need to be increased by $1.43 per month to pay the estimated $300,000 judgment.

On August 14, 2023, the City's outside counsel, James B. Betts, sent a letter to Costanzo demanding payment of the Kings judgment, which granted "the City's requested writ of mandate to compel the payment of an outstanding money judgment." Betts stated the writ obligated the District to pay the City $312,304.25, plus accrued interest, and out of an abundance of caution, the City was personally serving a copy of

---

Douglas Sloan, entered a mandate ordering Pinedale to pay $127,515.84 together with interest accrued of $18,080 and, further, on January 29, 2020, the King's County Superior Court awarded attorney's fees on an unknown basis in the mandate proceeding filed on Fresno's behalf by its City Attorney in the amount of $92,201 …." The same recital was included in the 2022 resolution.

the Kings judgment on the District, which included the original and amended judgments. Betts stated the District was in violation of the writ, as it had not paid the City, and if payment were not made within 20 days, the City would file a motion to enforce the writ under section 1097, and "request the imposition of all available remedies associated with [the District]'s persistent refusal to comply with the Court's order."

On August 15, 2023, the City filed a document entitled "NOTICE OF PERSONAL SERVICE OF NOTICE OF ENTRY OF JUDGMENT UPON RESPONDENT PINEDALE COUNTY WATER DISTRICT," which stated that the City was filing and serving an attached proof of service to reflect that the District was personally served with the "Notice of Entry of Judgment and the Second Amended Judgment, dated January 4, 2023," on August 14, 2023. The attached proof of service which stated the "NOTICE OF ENTRY OF JUDGMENT OR ORDER" was personally served on "Pinedale County Water District" at "480 W. Birch Avenue[,] Pinedale, CA 93650." Presumably, the document referred to is a notice of entry of judgment filed and served on January 4, 2023, which stated that a judgment, decree, or order was entered on December 27, 2022, a copy of which was attached. The attached judgment was the "Second Amended Judgment," which stated it amended the attached January 29, 2020 "Amended Judgment" (which amended the December 9, 2019 judgment to include the City's recovery of $92,201 in fees and costs against the District) to include postjudgment attorney fees, costs, and interest, and ordered the District to pay the City, as of January 1, 2023, the amount of $312,304.25, plus interest. The attached December 2019 judgment stated the petition for writ of mandate was granted and ordered the District to pay the City sums awarded under the Madera judgment, namely, $127,515.84, plus accrued interest of $18,080.

Costanzo responded by letter on August 23, 2023, that the City was threatening further litigation without inquiring as to whether the District had proceeded as required by Government Code section 970.8. Costanzo asserted that "[h]ad you made the inquiry

you would have learned that in accordance with applicable law, the water district …
operates on a fiscal year that runs from June 30 to July 1, each year." Costanzo reasoned
that because the Kings judgment did not become final until March 2023, the District was
not obligated to budget for its payment until the start of fiscal year 2023-2024.

Costanzo explained that in connection with the District's budgetary proceedings,
the District adopted the 2023 resolution on July 11, 2023, a copy of which was provided
to the mayor and city council. That resolution showed the District had been in contact
with the City to address the issue since November 2022, when the 2022 resolution was
adopted and provided to the mayor and city councilmembers.

Costanzo asserted "[t]he threat of unnecessary litigation over an audit the City
never pursued can only be characterized as an oppressive abuse of power by a city
against a less well funded public entity wholly within its boundaries." Costanzo stated
the District had "fully complied in the manner required by law" and the District intended
to conform to the judgment "in the manner in which it has established by the foregoing
resolutions and other action of its Board of Directors." Costanzo stated the District was
inviting the mayor and any interested councilmember to obtain information "relative to
how this monetary judgment came to exist" by attending the next board meeting set for
September 5, 2023, or contacting District staff to arrange an in-person meeting. Costanzo
attached to the letter the notice of public hearing on the proposed rate increase for sewer
service and a copy of the 2023 resolution.

At the October 17, 2023 public hearing, the board approved the $1.43 per month
increase in sewer service fees. The rate increase was included on bills for sewer service
beginning on November 1, 2023.

### The City's Motion to Enforce the Kings Judgment

In January 2024, the City filed a motion to enforce the Kings judgment and writ of
mandate pursuant to section 1097. The City asked the trial court to "order the District to

9.

satisfy the judgment immediately" and fine the District $1,000 given its "lengthy history of defiance of court authority."

The City argued it was necessary and proper to set a date certain for payment of the Kings judgment because the District had ample time to budget and pay the judgment since the judgment had been final since September 2022. One of the City's outside counsel, Joseph D. Rubin, declared that to his knowledge, "the District has not made any payment toward the judgment and has refused to identify when the District will be paying the judgment."

The City asserted the trial court should fine the District $1,000 because: (1) the District was personally served with the writ on August 14, 2023; (2) no payment had been made to satisfy the Kings judgment; and (3) the District had no excuse to continue its refusal to pay. In support of the last point, the City cited the extensive history of the litigation, including that the Madera judgment became final in April 2015, the City was forced to file an enforcement action because the District had failed to pay that judgment, which resulted in the issuance of the Kings judgment, and despite the finality of that judgment following the District's appeal, the District had not made any payment. The City asserted the District's response to the City's demand for payment was to try to relitigate issues already decided by the trial and appellate courts, and "[a]fter a decade of litigation, numerous final judgments, and rejection of every potential (and specious) defense, it is apparent that the District has no just excuse to not pay immediately."

The District opposed the motion, asserting that it had taken the steps necessary to budget, allocate, and levy charges necessary to pay the Kings judgment, and it had apprised the City of how and when the judgment would be paid. The District claimed Rubin committed perjury when he declared that the District refused to identify when it would be paying the judgment, as the 2023 resolution identified how and when the District would be paying the Kings judgment, namely, by raising sewage collection fees and paying the judgment over a 10-year period with payments to commence six months

10.

after the increased sewage rates became effective. The District noted the resolution was provided to the mayor, city councilmembers, and the City's counsel on August 23, 2023. The District further asserted the City had been aware of the District's intent to adopt the confidential resolution and raise sewer rates to pay the judgment in installments since November 2022, when the District's board president sent the letter to the mayor.

The District argued it did not fail to comply with the writ of mandate. First, the District asserted it was never properly served with a peremptory writ of mandate, as a peremptory writ of mandate was never issued that was separate from the December 2019 judgment, and the proof of personal service did not state that a peremptory writ of mandate was served on it. Moreover, the District asserted it was not served in the manner required for service of a summons, which the District claimed was required for service of a writ of mandate.

Next, the District asserted that within 40 days of the finality of the appellate nonpublished opinion in *City of Fresno v. Pinedale County Water District* (June 10, 2022, F080769), the District determined it had insufficient funds to pay the judgment and hardship would result unless the judgment were paid over a 10-year period, and it needed to assess charges against its customers to pay the judgment. The District then notified the City how it intended to pay the judgment within the District's fiscal year 2022-2023. The District claimed the Kings judgment was void and subject to attack at any time because the trial court did not have jurisdiction to amend the judgment to include attorney fees on appeal but was required to enter an independent judgment. The District asserted the void Kings judgment forced the District to reassess the hardship and the levying of charges to pay the judgment, which it did in July 2023.

The District argued it was not necessary or proper to order compliance with the writ, as no writ was issued and, even if it had, the District complied with the writ. The District further argued grounds did not exist to impose a $1,000 fine, as there was no writ, a writ was not served on it, and the District fully conformed to the statutory

11.

provisions dictating the manner in which it may arrange for and appropriate money to pay the judgment.

In the City's reply, the City asserted the District had an independent statutory obligation to pay all of the judgments issued against it, yet it failed to do so. Specifically, the District had an independent statutory obligation to pay the Madera judgment by June 30, 2016, and the Kings judgment by June 30, 2023, or immediately upon obtaining sufficient funds. In response to the District's argument that the City needed to separately serve a "Writ of Mandate," the City asserted (1) the District did not identify any prejudice from the lack of a separate document entitled "Writ of Mandate"; (2) the District recognized it was required to comply and claimed it attempted to do so; and (3) the Kings judgment effectively functioned as a writ and operated as one by its express terms, as it directed the District to pay the Madera judgment and was written as though it was a writ of mandate by incorporating the statement of decision with explicit directions on paying the Madera judgment. Finally, the City contended that because the District appealed the December 2019 judgment and the January 2020 amended judgment and lost, it was required to comply with the Kings judgment, including the grant of a writ of mandate.

In addressing the District's assertion that the 2023 resolution identified the time and manner of future payments, the City pointed out the District's notices depended on utilizing the installment payment procedures found in Government Code section 970.6. The District, however, never sought court approval to make installment payments. Rather, the District invoked the installment payment procedure without court approval. Thus, while the District claimed to have given notice it intended to invoke Government Code section 970.6, it could not point to any motion or application for court approval of the installment payments. The City argued that while the District asserted the Kings judgment was void, the District did not appeal from that judgment and it was proper to incorporate the postjudgment award of costs and fees into the underlying judgment for enforcement purposes.

12.

A hearing on the City's motion was held on February 26, 2024. At the hearing, the District's counsel pointed out resolutions were sent to the City in November 2022 and July 2023 that provided the District would suffer unreasonable hardship if it could not pay the judgment in 10 annual installments, but the District "didn't hear a peep from them" other than to state the City would negotiate in good faith over how the judgment would be paid and the City never claimed the recitations in the resolutions were untrue.

After taking the matter under submission, the trial court issued an order granting the City's motion on March 7, 2024. The trial court found the original amended judgment was issued on January 31, 2014, with the City tendering a demand for payment to the District on February 11, 2014, and the City filed the first petition for writ of mandate in June 2017, which was granted and affirmed on appeal. The trial court found relevant that the award of accrued interest, attorney fees, and costs in connection with that petition did not change the date of finality of the original amended judgment, which the District had a clear and present duty to pay. The trial court declined the District's invitation to re-examine the validity of the Kings judgment because the validity of the judgment was settled by the Court of Appeal.

With respect to the District's claim that it had taken steps to budget the payment of the judgment and it kept the City informed of the resolution to pay the judgment in 10 annual payments, the trial court noted there was no evidence that any court had found, after a hearing, that payment of the judgment in installments was necessary to avoid an unreasonable hardship, as required by Government Code section 970.6, subdivision (a)(2). The trial court reasoned that absent an application for and granting of the installment exception of Government Code section 970.6, subdivision (a), the District was required to abide by the payment provisions of Government Code sections 970.4 and 970.5, and the budgeting provision set forth in Government Code section 970.8. The trial court found the District's attempts to sua sponte invoke an

13.

installment plan without moving for court approval ignored the budgeting requirement of Government Code section 970.8, subdivision (a).

Accordingly, the trial court: (1) granted the City's petition; (2) ordered the District to pay the Kings judgment "immediately upon obtaining sufficient funds"; (3) found the District's attempt to pay the judgment in installments pursuant to Government Code section 970.6 was ineffective due to its failure to obtain court approval; and (4) imposed a $1,000 fine due to the District's "persistent failure to make plans to pay the full judgment in a timely manner and/or otherwise take timely steps to secure approval of a payment plan from the court." The trial court noted that nothing in its decision precluded the District from seeking court approval for an installment agreement pursuant to Government Code section 970.6.[5]

## DISCUSSION

The District contends the trial court erred in granting the City's motion to enforce the writ of mandate and issuing the orders to pay the Kings judgment and the $1,000 fine because: (1) a writ of mandate was never issued or personally served on the District; (2) the District did not refuse or neglect to conform to any writ without just excuse, as it made plans to pay the judgment by passing the resolutions and notifying the City that it intended to pay the judgment in installments pursuant to Government Code section 970.6; and (3) the City impliedly accepted the payment plan and is estopped from objecting to it because it did not object to the District's plan to pay the judgment in installments.

---

[5] The register of actions shows that on April 23, 2024, before the District filed the notice of appeal, the District filed a motion to make installment payments under Government Code section 970.6, a tentative ruling was issued on May 29, 2024, after this appeal was filed, and a hearing was held the following day. The record also shows that the District filed a motion to vacate the second amended judgment on April 24, 2024. The record does not show the court's ruling on either motion.

*Enforcement of a Writ of Mandate*

When a court issues a judgment granting a petition for writ of mandate, it is required by statute to award a writ of mandate.[6]  Section 1095 provides:  "If judgment be given for the applicant [who sought a writ of mandate], … a peremptory mandate must also be awarded without delay."  As we recently explained, "[o]rdinarily, the word 'must' is perceived as mandatory, which would indicate the prompt award of 'a peremptory mandate'—that is, a writ of mandate—is required."  (*Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 424.)[7]

After the writ of mandate is issued, it "must be served in the same manner as a summons in a civil action, except as otherwise expressly directed by order of the Court.  Service upon a majority of the members of any Board or body, is service upon the Board or body, whether at the time of the service the Board or body was in session or not."  (§ 1096.)  Service of the writ on a local public agency may be made by delivering a copy to "the clerk, secretary, president, presiding officer, or other head of its governing body."  (§ 416.50, subd. (a); *Wagner v. City of South Pasadena* (2000) 78 Cal.App.4th 943, 951

---

[6]     We note that a money judgment against a local public entity is not enforceable by execution; rather, payment must be compelled via a writ of mandate.  (Gov. Code, § 970.2; Code Civ. Proc., § 695.050; *Joseph v. San Francisco Housing Authority* (2005) 127 Cal.App.4th 78, 81.)

[7]     We further explained:  "California practice guides addressing mandamus state that when a superior court grants a petition for writ of mandamus, the court usually instructs the petitioner's counsel to prepare the peremptory writ of mandamus.  (2 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2023) § 15.1, p. 15-2 [documents required if writ is granted]; 1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2023) §§ 9.41–9.44, p. 9-17 [petitioner's preparation of peremptory writ].)"  (*Cisneros*, *supra*, 104 Cal.App.5th at p. 424.)

California practice guides further explain that the judgment and writ are separate documents, with the writ addressed to the respondent and signed by the clerk.  (The Rutter Group, Cal. Practice Guide—Administrative Law, Pretrial and Trial of Mandamus Cases, ¶ 20:311.)  The writ commands the respondent to take the actions specified in the judgment and generally contains a date for the respondent to file a return specifying what action was taken in response to the writ.  (*Id.* at ¶¶ 20:320, 20:321.)

[service of a petition for writ of administrative mandamus on an associate attorney in a law firm representing a city was ineffective absent a showing the associate was the city's agent for service].)

A court that "issues a writ of mandate retains continuing jurisdiction to make any orders necessary and proper for the complete enforcement of the writ." (*Professional Engineers in Cal. Government v. State Personnel Bd.* (1980) 114 Cal.App.3d 101, 109; accord, *Molar v. Gates* (1979) 98 Cal.App.3d 1, 25.) Any inadequacy or failure to fully comply with the writ "may be dealt with in subsequent orders of the court." (*Professional Engineers*, at p. 110.)

This authority flows from the court's inherent authority to compel obedience to its orders and judgments, authority which has been codified at section 1097.[8] Section 1097 has been construed as vesting the trial court with wide latitude in issuing additional orders or granting supplemental or additional writs to enforce full performance of a judgment on a writ, even years after the issuance of the original writ. (See, e.g., *King v. Woods* (1983) 144 Cal.App.3d 571, 577–578 [affirming order granting motion to enforce writ 10 years after issuance of writ]; *City of Carmel–by–the–Sea v. Board of Supervisors of Monterey County* (1982) 137 Cal.App.3d 964, 971 [petitioner may seek to obtain compliance with original writ in multiple ways including by filing motion to enforce or supplemental writ in original action, or filing a new writ petition].)

Section 1097 "authorizes three methods by which a court may enforce a peremptory writ of mandate: (1) a court may impose a fine not exceeding $1,000; (2) a

---

[8]     Section 1097 provides: "If a peremptory mandate has been issued and directed to an inferior tribunal, corporation, board, or person, and it appears to the court that a member of the tribunal, corporation, or board, or the person upon whom the writ has been personally served, has, without just excuse, refused or neglected to obey the writ, the court may, upon motion, impose a fine not exceeding one thousand dollars. In case of persistence in a refusal of obedience, the court may order the party to be imprisoned until the writ is obeyed, and may make any orders necessary and proper for the complete enforcement of the writ."

court may order the disobedient party to be imprisoned until the writ is obeyed; and (3) a court may make any order necessary and proper to enforce the writ…. [¶] The third method, allowing the court to order compliance, is the least severe and thus only requires that a court find that such an order is necessary and proper under the circumstances." (*King v. Woods*, *supra*, 144 Cal.App.3d at pp. 577–578.) Since the authority to make an order necessary to enforce the writ is "an inherent power of a court issuing a writ" and exists even in the absence of section 1097's express statutory grant, the power to order compliance with a writ is not dependent on a showing of willfulness or persistent refusal to comply, but may be used when there is any inadequacy in the compliance with the writ. (*King*, at p. 578.)

Before imposing a fine, the court must find the following three elements: (1) "the party was personally served with the writ"; (2) "the party refused or neglected to obey the writ"; and (3) "the party's refusal or neglect was without just excuse." (*King v. Woods*, *supra*, 144 Cal.App.3d at p. 578.) The fine is akin to a contempt penalty. (*Ibid.*) Thus, while section 1097 may be read to require a showing of willfulness before fines may be imposed, "the term 'willful' should not be construed as meaning only a deliberate intention to disregard a court order, but rather as encompassing an indifferent disregard of the duty to obey the order promptly." (*King*, at pp. 578–579.)

When reviewing an order enforcing a writ of mandate, the validity of the underlying writ is not at issue. (*Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1114.) Rather, we review the trial court's enforcement order pursuant to section 1097. (*Brown*, at p. 1114.) Under that statute, the issue is whether the trial court erred either in concluding the District failed to comply with the writ or in fashioning the specifics of the order enforcing the writ. (*Ibid.*) Our focus is on the District's response to the writ and the trial court's assessment of that response. (*Ibid.*) Of course, we consider issues of statutory interpretation de novo. (*Ibid.*; *City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1477.)

***The Absence of a Writ of Mandate***

We begin with the District's contention that section 1097 could not be used to enforce the Kings judgment because a writ of mandate was never issued or served on the District, as it is dispositive of this appeal. The enforcement mechanisms of section 1097 can only be used when "a peremptory mandate has been issued and directed to an inferior tribunal, corporation, board, or person." (§ 1097.) Here, it is undisputed that a peremptory writ of mandate directed to the District's board was never issued or served on the District. The City cannot seek to enforce a writ of mandate that was never issued.

Instead of serving a writ of mandate on the District's board, the City treated the Kings judgment as a writ of mandate and personally served it on the District at its business office five months before bringing the enforcement motion. Although the District argued in its opening appellate brief that section 1097 could not be applied against it because a writ of mandate was never issued, the City does not address that issue in its respondent's brief. In the trial court, the City argued the Kings judgment functioned and operated as a writ because it directed the District to pay the Madera judgment. The City further asserted the District recognized it was required to comply with the Kings judgment and claimed it attempted to comply.

We have concluded that "[b]ecause there is no statutory provision forbidding the waiver of the issuance of a writ of mandate, it is possible for the parties to jointly waive the right under Code of Civil Procedure section 1095 to have a writ issued." (*Cisneros v. Department of Motor Vehicles*, *supra*, 104 Cal.App.5th at p. 424.) "[A] joint waiver is necessary because the writ protects the interests of each side by specifying what the agency is commanded to do. The parties' waiver may be expressed in words, either oral or written, or implied by their conduct." (*Ibid.*)

To the extent the City contends there was a joint waiver of the right to have a writ of mandate issued, there is insufficient evidence that the District intended to waive that right. The District's recognition that it was required to comply with the Kings judgment

and its attempt to comply does not equal an intentional relinquishment of the right to have a writ issued. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [" ' "waiver is the intentional relinquishment of a known right after knowledge of the facts" ' "].) It merely demonstrates an acknowledgement that it was required to comply with the judgment.[9]

The District also contends a writ was not served in the same manner as a summons in a civil action, as required by section 1096, because it was not personally served on a person but instead was served on the District at its business address. The City contends the District did not raise this argument below and therefore waived the argument. (See *Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1152 [" ' "issues not raised in the trial court cannot be raised for the first time on appeal" ' "].) But the District asserted in its opposition below that the proof of service did not "reflect service of the document described in the manner required for service of a summons." Accordingly, waiver does not apply here.

The City also contends there is sufficient evidence to support the trial court's implied finding that the District was personally served with the Kings judgment. But the District's point is not that the Kings judgment was not served at the District's business office, but rather it was not served on a person, namely, a clerk, secretary, president,

---

[9] In the trial court, the City relied on *City of Carmel-by-the-Sea v. Board of Supervisors*, *supra*, 137 Cal.App.3d at page 970 and footnote 4, to argue that regardless of whether a writ issued, the District was required to comply with the Kings judgment that granted the peremptory writ after having lost its appeal from that judgment. In that case, which was an appeal from an order that a board of supervisors failed to comply with a peremptory writ of mandate, the appellate court recognized the record did not contain a peremptory writ of mandate or an indication that one was ever issued and served. (*Id.* at pp. 966, 970.) The board of supervisors, however, filed a return to the peremptory writ of mandate stating it complied with the writ and apparently did not complain about the absence of a writ of mandate. (*Id.* at p. 970.) Thus, the board of supervisors in *City of Carmel-by-the-Sea* arguably waived the right to demand the issuance of a writ of mandate. In contrast here, the District did not file a return and it contends the issuance of a writ is required.

presiding officer, or other head of the District's board, as required by section 416.50, subdivision (a). Moreover, section 1097 contemplates service of the writ of mandate on a person, including a board member, before imposing a fine or making orders that are necessary and proper for the complete enforcement of the writ. (§ 1097 ["If … it appears to the court that a member of the tribunal, corporation, or board, or the person upon whom the writ has been personally served, has, without just excuse, refused or neglected to obey the writ, the court may, upon motion, impose a fine not exceeding one thousand dollars."].)

In sum, the failure to obtain a writ of mandate and to serve it on the District as required by section 1096 is fatal to the City's motion to enforce the writ of mandate. Accordingly, we do not address the party's remaining arguments concerning the District's compliance with the Kings judgment or the trial court's imposition of the fine pursuant to section 1097.

## DISPOSITION

The trial court's March 7, 2024 order granting the City's motion, ordering the District to pay the Kings judgment, and fining the District $1,000 is reversed. Costs on appeal are awarded to the District.

DE SANTOS, J.

WE CONCUR:

DETJEN, Acting P. J.

FRANSON, J.

20.